Filed 7/9/14  In re L.H. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.H., a Person Coming Under the Juvenile Court Law. | B254136 (Los Angeles County Super. Ct. No. DK02239) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.R.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles, Philip L. Soto, Judge.  Dismiss.

A.R., in pro. per.; and Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

A.R. (Mother) appeals from the dependency court's jurisdictional and dispositional order removing her two-year old son from her care.  We appointed counsel for Mother.  Counsel filed an opening brief informing us that she was unable to find any arguable issues and requesting that we exercise our discretion to permit Mother personally to submit a supplemental brief.  Mother filed a supplemental brief.  Neither Mother's brief nor our independent review of the record reveals any arguable issues.  Accordingly, we dismiss the appeal.

## BACKGROUND

On November 13, 2013, the Los Angeles Department of Children and Family Services ("DCFS") filed a section 300 petition ("Petition") on behalf of Mother's two-year-old son, L.H., alleging that on November 7, 2013, Mother had failed to provide appropriate parental care and supervision for L.H., resulting in L.H. being found alone in the middle of a busy street by law enforcement.  The Petition alleged that L.H. had no caretaker for three and one-half hours and Mother was arrested on that day on charges of child endangerment.  The Petition also alleged that Mother had a history of substance abuse and was a current abuser of marijuana, rendering her incapable of providing regular care for L.H. and that on prior occasions in 2013, Mother was under the influence of marijuana while L.H. was in her care and supervision.

Also on November 13, 2013, DCFS filed a Detention Report stating that Mother was incarcerated and that L.H. was placed with Mother's foster parent and guardian, Dolores A.[1]  According to the Detention Report, at approximately 2:00 p.m. on November 7, 2013, a good samaritan found L.H. in Lynwood near a busy street pushing a full size stroller and attempting to cross the street.  The good samaritan was unable to find L.H.'s guardian or caregiver and flagged down a passing sheriff's deputy.  The deputy, Deputy Roman, waited approximately an hour at the location attempting to locate

_____

[1] According to the Detention Report, Mother has an extensive history with DCFS as a minor, having had 12 placements during her childhood.

L.H.'s guardian or caregiver before taking L.H. to be examined at a medical center. The sheriff's station held a press conference with L.H., and shortly thereafter Mother and Dolores A. contacted the station asking about L.H.

When interviewed by a social worker, Dolores A. stated that she returned home from work at about 1:30 p.m. Mother was in her bedroom at the home sleeping, and Mother's friend Champagne Y. was also at the house and watching L.H. Dolores A. saw and spoke to L.H., before leaving to run errands. After running errands, Dolores A. returned home and knocked on Mother's door to get L.H. to feed him but L.H. was not in the bedroom and Mother did not know where L.H. was, telling Dolores A. that he was with Champagne. Dolores searched for L.H. inside and outside the home but could not find L.H. Dolores described Mother as "hysterical" and "crying." Dolores spoke to a neighbor who told her the police had picked up a child but the neighbor did not know if the child was L.H. and also saw on the news that the police had found a child in Lynwood.

Dolores also stated that the house is surrounded by a large fence that the family usually keeps locked but that someone may have left the gate open, allowing L.H. to leave the yard. Dolores showed the DCFS social worker that Mother's bedroom had a door leading to the garage and a gate from the garage to the street. Dolores stated that the bedroom door, garage door and front gate of the house are always kept locked and L.H. is never left alone.

Dolores also stated that Mother smoked marijuana at night to help Mother sleep and that Mother has a medical marijuana card. Dolores said that Mother normally does not sleep during the day and is normally very protective of L.H. Dolores did not know if Mother smoked marijuana on the day of the incident.

According to the Detention Report, the responding deputy, Deputy Roman, in his interview stated that Mother "didn't seem too distraught" and told him that she was napping the entire time L.H. was missing and that her friend Champagne was supposed to be watching him. Deputy Roman noted that Mother's cell phone showed text messages at about 3:30 p.m. and that there were "inconsistencies with [Mother's] story about what

3

happened with the child." Deputy Roman arrested Mother for felony child endangerment based "on the fact that it took [Mother] 3 ½ hours to realize her child was gone, and the fact the child could have been seriously injured while walking in the street."

When interviewed by DCFS, Champagne stated that she was home when L.H. left the house unnoticed but denied that she had been asked by Mother to watch L.H. Champagne believed L.H. was in the bedroom sleeping with his Mother.

The Detention Report also indicated that Mother has an open DCFS court case as a non-minor dependent but has not been in compliance with the court orders or cooperative with DCFS staff. Mother's case worker expressed concern that Mother was not receiving needed mental health services and her diagnosis was unknown. Mother had a referral from May 2013 in which the caller stated that Mother was diagnosed with bipolar disorder and was not in compliance with her medication. The referral allegations were concluded as "unfounded."

In a January 6, 2014 Jurisdiction/Disposition Report, DCFS reported that Mother had been interviewed[2] but "provided short answers and would not elaborate on her responses." As to the allegation that L.H. had no caretaker for three and one-half hours and was found on the street by law enforcement, Mother stated that it was "all incorrect," that it was "only 2 hours," she did "not fail to watch him" as she "gave him to someone to watch," and she did not know what was happening but "started to look for him right away." As to the allegation that Mother is a marijuana abuser, Mother stated that she did smoke marijuana, but she did not smoke when she had L.H., had a medical card, used the marijuana to help her sleep or calm down because she had anger management issues, and that "It's all legal." She stated that she did not "smoke that much as everyone [expletive] assumes" and that if tested her "levels are very low."

Dolores was interviewed again and stated that on November 7, 2013, when she got home from work at about 1:30 p.m., Mother and L.H. were getting ready for a nap. Dolores left to run errands and returned without completing an errand in order to wake

---

[2] Mother was not interviewed for the Detention Report as she was unavailable after being arrested.

4

L.H. from his nap. That when she knocked on Mother's door, Mother said that L.H. was not with her but with her friend Champagne. Champagne said she thought L.H. was with Mother sleeping. Dolores checked with a neighbor with kids with whom L.H. sometimes played but he was not there. They began calling L.H.'s name and Mother was hysterical and crying while she called L.H.'s name. Another neighbor told Dolores that the police had found a little boy wandering on the street but the neighbor did not see the boy and did not know if it was L.H. Dolores called the station and described L.H. and was told the description matched the boy they had.

Dolores reported that everyone at the home was always careful to make sure all gates were closed. Dolores described Mother as a good mother and very protective of L.H.

As to the marijuana use, Dolores stated that Mother never smoked around L.H., always going outside after he was asleep, and that Mother had a medical marijuana card.

The Jurisdiction/Detention Report noted that there was a concern "that the child's ability to leave the home and remain out of the home unnoticed may have been influenced by the mother's substance abuse" as well as concerns about Mother's unresolved mental health issues and self medication. The report also noted that although "Mother" was described as a good mother, "the fact remains that she did not take the time to ensure that the person who she left the child in charge of [*sic*] was fully aware of this."

At the January 6, 2014 jurisdiction hearing, the court received into evidence the Jurisdiction/Disposition Report and the Detention Report, including attachments. No other evidence was presented. After argument, the juvenile court found both allegations in the petition to be true by a preponderance of the evidence.

The court ordered that DCFS would have discretion to allow Mother to reside in the home of Dolores and stated that DCFS was "not to withhold discretion unreasonably." The court also ordered Mother to be referred for random drug testing.

On January 28, 2014, DCFS filed a Last Minute Information report indicating that Mother refused any contact with the DCFS social worker and therefore DCFS was unsure what programs Mother had initiated, and Mother had not participated in random drug

5

testing. The report stated that DCFS "could not recommend that [Mother] reside in the same home as the child, [L.H.]."

At the January 28, 2014 dispositional hearing, after the Last Minute Information was received into evidence, the juvenile court declared L.H. to be a dependent of the court and found that placement in the home of Mother was contrary to his welfare and created a substantial risk of danger to him. Mother filed a notice of appeal the same day.

## DISCUSSION

We appointed appellate counsel to represent Mother. On April 15, 2014, Mother's counsel filed an opening brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, informing us that she had found no arguable issues and requesting us to exercise our discretion to permit Mother to submit her own brief. (See *In re Sade C.* (1996) 13 Cal.4th 952, 981-982.) On May 13, 2014, Mother submitted a supplemental brief in pro. per. We have reviewed Mother's supplemental brief and, out of an abundance of caution, have also independently reviewed the record. We find no good cause that an arguable issue for appeal does, in fact, exist. Accordingly, we dismiss the appeal.

## DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

JOHNSON, J.           MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6